UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FOREVERMORE MUSIC, INC.,

Plaintiff,

v.

43 NORTH BROADWAY, LLC,

Defendant.

**DECISION AND ORDER**

6:25-CV-06078 EAW

**INTRODUCTION**

Plaintiff Forevermore Music, Inc. ("Forevermore") brings this action asserting claims of copyright infringement, false advertising, unjust enrichment, and unfair competition against defendant 43 North Broadway, LLC ("43 North"). (Dkt. 5). Forevermore seeks declaratory relief, money damages, and a permanent injunction. (*Id.*). Pending before the Court is a motion filed by 43 North seeking dismissal or transfer of the case based on improper venue, and alternatively dismissal of certain causes of action. (Dkt. 13; Dkt. 14). Also pending is a cross-motion filed by Forevermore to replead pursuant to Fed. R. Civ. P. 15(a)(2) if the Court grants 43 North's motion to dismiss in whole or in part, and to conduct venue discovery before the Court dismisses or transfers the case based on improper venue. (Dkt. 18-5).

Because venue is not proper in this district, the Court grants 43 North's motion to the extent it seeks transfer to the Southern District of New York. The Court denies 43 North's motion to dismiss based on venue, and denies as moot the motion to dismiss

pursuant to Fed. R. Civ. P. 12(b)(6) which was sought only in the alternative if the venue arguments were rejected. (*See* Dkt. 14 at 17). The Court also denies as moot Forevermore's motion to replead and denies its request to conduct venue discovery. The Clerk of Court is directed to transfer this case to the Southern District of New York for further proceedings.

**BACKGROUND**

The following facts are taken from Forevermore's amended complaint, which is the operative pleading. As required at this stage, Forevermore's factual allegations are taken as true.[1]

Forevermore, a New York corporation located in Pittsford, New York, owns a collection of master recordings consisting of music from the late 1950s and 1960s, originally distributed on the Swan Records music label (the "Masters"). (Dkt. 5 at ¶¶ 3, 5, 10). Swan Records filed for bankruptcy in the 1960s and an entity called Master Releasing, Inc. acquired the Masters in the bankruptcy proceeding. (*Id.* at ¶ 11). Conquest Enterprise, Inc. thereafter acquired Master Releasing, Inc.'s assets. (*Id.* at ¶ 12). In 1993, Conquest Enterprise, Inc. entered into a joint agreement with Forevermore, "pursuant to which, Forevermore was licensed to publish, broadcast, permit the public performance of, broadcast, manufacture, re-release, sell or offer to sell the Masters sound recordings." (*Id.*). The physical tapes of the Masters are in the possession of Forevermore in Pittsford, New

---

[1] Along with its memorandum in opposition, Forevermore submitted an affidavit from its president with several exhibits. A court may "consider facts outside of the pleadings on a Rule 12(b)(3) motion." *Allied Dynamics Corp. v. Kennametal, Inc.*, 965 F. Supp. 2d 276, 288 (E.D.N.Y. 2013).

York. (*Id.* at ¶¶ 12, 31 n.4). Forevermore sought copyright protection of the Masters by filing a "Pre-1972 Schedule of 472 sound recordings" with the Register of Copyrights. (*Id.* at ¶ 14).

43 North is a limited liability company located in White Plains, New York that "reproduces digital recordings and distributes them to digital music streaming services." (*Id.* at ¶¶ 6, 15). On its website, 43 North marketed digital versions of songs from Swan Records that are included in the Masters and used an image of the old Swan Records label. (*Id.* at ¶¶ 15, 16). 43 North also promoted songs from the Swan Records catalog owned by Forevermore on the digital music streaming platforms Spotify and Amazon Music. (*Id.* at ¶¶ 17-19).

## DISCUSSION

### I. LEGAL STANDARD

"[O]n a Rule 12(b)(3) motion to dismiss based on improper venue, the burden of showing that venue in the forum district is proper falls on the plaintiff." *U.S. E.P.A. ex rel. McKeown v. Port Auth. of N.Y. & N.J.*, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001), *aff'd sub nom. McKeown v. Delaware Bridge Auth.*, 23 F. App'x 81 (2d Cir. 2001). But "the court is obligated to credit the plaintiff's factual averments as true, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor." *Dow Jones & Co., Inc. v. Perplexity AI, Inc.*, 797 F. Supp. 3d 305, 333 (S.D.N.Y. 2025). "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Id.* (quoting *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013)).

If venue is improper, a district court may transfer a civil case pursuant to 28 U.S.C. § 1406(a), to another district where it may have been initiated if transfer is in the interest of justice. "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993). Section 1404 similarly provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

## II. ANALYSIS

43 North argues that Forevermore cannot establish that venue is proper under either the venue provision specific to copyright claims, 28 U.S.C.§ 1400(a), or the general venue statute, 28 U.S.C. § 1391(b), and moves to dismiss or transfer this case based on improper venue. (Dkt. 14 at 10-15).[2] For the reasons set forth below, Forevermore fails to meet its burden to show that venue is proper in this district under either statute.

---

[2] While venue for Forevermore's copyright claims is governed by 28 U.S.C. § 1400(a), venue for the non-copyright claims is governed by 28 U.S.C. § 1391(b). *See World Film Servs., Inc. v. RAI Radiotelevisione Italiana S.p.A.*, No. 97 CIV. 8627 (LMM), 1999 WL 47206, at *7 (S.D.N.Y. Feb. 3, 1999) (observing that venue for plaintiff's copyright claims governed by 28 U.S.C. § 1400(a) and venue for the non-copyright claims governed by 28 U.S.C. § 1391(b)); *BBC Enters. Ltd. v. Gold Coast Tape Distrib., Inc.*, No. 88 CIV. 7786 (CSH), 1991 WL 84543, at *3 (S.D.N.Y. May 14, 1991) ("The special venue statute for copyright claims does not apply to the related pendent claims.").

**A. Venue for Copyright Claims**

28 U.S.C. § 1400(a) provides that venue is proper in a copyright case if the action is "instituted in the district in which the defendant or his agent resides or may be found." It is undisputed that 43 North is a New York limited liability company with a principal place of business in White Plains, New York, which is located outside the Western District of New York. (*See* Dkt. 5 at ¶ 6; Dkt. 14 at 14). Forevermore pleads no plausible facts suggesting that 43 North has specific contacts in this district, such as the presence of officers, employees or members in this district, or sales and marketing activities in this district. Rather, Forevermore's contention that § 1400(a) allows venue to be placed in this district relies solely on its position that "if personal jurisdiction over the Defendant exists (as it does here), venue is proper in any of the districts in New York." (Dkt. 18 at 4).

The caselaw is not fully aligned on the proper application of § 1400(a). In addressing whether a defendant "may be found" in a particular district, many courts have required the defendant to have specific jurisdictional contacts in the district rather than contacts merely within the state. *See, e.g.*, *Sunlight Sols., LLC v. Birnbaum*, No. 06-CV-683A, 2008 WL 724215, at *6 (W.D.N.Y. Mar. 17, 2008) ("The inquiry under § 1400(a) focuses on whether the jurisdictional contacts relied upon are specific to the district in which the case is brought, not merely the state in which the district court sits."). The Second Circuit has not addressed the issue, but two other circuit courts have and both treated the specific district as a separate state for purposes of the § 1400(a) venue analysis and required in-district contacts. *See Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1126 (9th Cir. 2010) ("This circuit interprets [§ 1400(a)] to allow venue in any

judicial district where, if treated as a separate state, the defendant would be subject to personal jurisdiction."), *abrogated on other grounds by Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017); *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*, 8 F.3d 441, 446 (7th Cir. 1993) ("Thus, section 1400(a) itself requires that a defendant be found in a particular judicial district, rather than in the state in which the district court sits.").

That said, Forevermore relies on cases from the Eastern District of New York and Southern District of New York where venue was found to be proper under § 1400(a) without requiring the entity defendant to have district-specific contacts. These cases concluded, as argued by Forevermore here, that because the defendant was a New York entity, it was subject to personal jurisdiction throughout New York state even though it lacked contacts in the particular district. *See, e.g.*, *Keivom v. New Russian Word Inc.*, No. 24 CIV. 3573 (DEH) (RFT), 2025 WL 2941222, at *5 (S.D.N.Y. May 23, 2025), *report and recommendation adopted*, No. 24-CV-3573 (DEH) (RFT), 2025 WL 2939121 (S.D.N.Y. Oct. 16, 2025) ("[V]enue is proper in this District under section 1400(a): Defendant qualifies as a resident of this District because it is subject to personal jurisdiction throughout New York State as a result of its principal place of business being located in the State."); *Wareka v. Dryluxe LLC*, No. 21 CV 2422 (MKB)(LB), 2022 WL 2467544, at *1 n.3 (E.D.N.Y. Apr. 7, 2022) ("Although both of defendant's blow-dry beauty bars are located in the Southern District of New York, venue is proper in [the Eastern District] since Dryluxe, a New York Corporation, is subject to personal jurisdiction throughout New York State."), *report and recommendation adopted*, No. 21CV2422MKBLB, 2022 WL 2753106

(E.D.N.Y. July 14, 2022); *Kennedy Stock, LLC v. NLS New York Inc.*, No. 18CV4991PGGBCM, 2019 WL 13096650, at *4 (S.D.N.Y. Nov. 18, 2019) ("'Where the defendant is an entity, it is deemed to reside in a district where it is subject to the court's personal jurisdiction with respect to the civil action in question.' Since [defendant] is subject to personal jurisdiction throughout New York State, it is deemed to reside in this district." (citations omitted)), *report and recommendation adopted*, No. 18CIV4991PGGBCM, 2021 WL 5013737 (S.D.N.Y. Oct. 27, 2021).

But as 43 North points out (Dkt. 19 at 7), the defendants in the cases relied on by Forevermore defaulted and venue was therefore not contested. Moreover, while not addressed by either party, all of these cases seemingly rely on 28 U.S.C. § 1391(c)(2) which states that an entity defendant "whether or not incorporated, shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction," without acknowledging that in a state like New York, with multiple districts, under § 1391(d) a corporate defendant is only deemed to reside in a district in the state where its contacts in that district "would be sufficient to subject it to personal jurisdiction if that district were a separate State. . . ."[3]

---

[3] As more than one commentator has acknowledged, § 1391(c)(2) deals with the residence of any entity and was amended in 2011 to make it equally applicable to "corporations and unincorporated associations," but Congress may have inadvertently omitted to similarly amend § 1391(d) and thus it is unclear if Congress intended that section to apply when "determining the residence of unincorporated entities for purposes of venue in multidistrict states." 17 Moore's Federal Practice § 110.03 (3d ed.); *see also* 14D Wright & Miller's Federal Practice and Procedure § 3811.1 (4th ed.) ("Congress's failure to amend what is now Section 1391(d) to conform to what it changed in what is now Section 1391(c)(2) appears to be an oversight. The legislative history says nothing on the point. The little case law generated so far indicates that courts may apply Section 1391(d) to

The Court concludes that for purposes of § 1400(a), the defendant must have sufficient contacts in the district—being subject to personal jurisdiction in the state is not enough. As recognized by the Seventh Circuit in *Milwaukee Concrete Studios*, the statutory language expressly requires that the defendant or his agent reside or may be found "in the district" and not "the state in which the district court sits." 8 F.3d at 446. And equating cases involving personal jurisdiction to § 1400(a) so as to liken the "may be

---

unincorporated associations, in consonance with the expanded definition in Section 1391[(c)](2).").

Several courts have applied § 1391(c)'s pre-amendment precedent to conclude that § 1391(d) likewise applies to unincorporated entities such as limited liability companies. *See, e.g.*, *Multiscaff Ltd. v. APTIM Fed. Servs., LLC*, No. 3:23CV22 (RCY), 2023 WL 6541846, at *3 n.5 (E.D. Va. Oct. 6, 2023) (§ 1391(d) included LLC within its scope, and citing cases in support of that conclusion); *Stohl v. Magic Mountain, LLC*, No. 2:17-CV-01858-TLN-DB, 2019 WL 498993, at *3 (E.D. Cal. Feb. 8, 2019) ("Although § 1391(d) refers only to corporations, courts have reasoned that the prior statutory language of § 1391 implores courts to apply § 1391(d) to both corporations and other entities 'for whom venue was historically analyzed analogously with corporations,' such as limited liability companies." (citation omitted)); *Graham v. Dyncorp Int'l, Inc.*, 973 F. Supp. 2d 698, 701 n.2 (S.D. Tex. 2013) (explaining that before § 1391(c) was amended "[c]ourts . . . including the Supreme Court, had long interpreted the term 'corporation' in section 1391(c) to include unincorporated associations like partnerships and LLCs" and concluding that § 1391(d) applied to "unincorporated entities like LLCs"). This approach is not universal. *See F. US, Inc. v. Flow Valve, LLC*, No. CIV-17-0495-F, 2017 WL 11139697, at *5 (W.D. Okla. July 5, 2017) ("Despite the clear language of § 1391(d) as applicable to corporations, it appears there is an open question as to whether § 1391(d) applies to an unincorporated entity such as the defendant in this action, . . . which is a limited liability company and not a corporation. . . .").

The Court finds persuasive the authorities suggesting that a limited liability company falls within the scope of § 1391(d). Indeed, Forevermore at least implicitly concedes § 1391(d)'s applicability. In other words, Forevermore does not contest that 43 North is not a resident of this district for purposes of § 1391(b)(1). *See* Point II(B), *infra*. But if § 1391(d) did *not* apply and residency for an LLC such as 43 North was determined solely by reference to § 1391(c)(2), then venue could presumably be placed in this district pursuant to § 1391(b)(1). But again, Forevermore makes no effort to contest 43 North's argument that § 1391(b)(1) does not provide a basis for venue.

found" clause of § 1400(a) with "amenability to personal jurisdiction" undermines the fact that "section 1400(a) is concerned solely with venue and not personal jurisdiction." *Id.* As explained by one commentator:

> Under either the "resides" or "may be found" language, the question is the same: whether the defendant is subject to personal jurisdiction in the district. This determination for venue purposes differs from the usual jurisdictional analysis in that it must be made with respect to the district (in multidistrict states), not with respect to the state as a whole.

17 Moore's Federal Practice § 110.39 (3d ed.).

To the extent Forevermore attempts to distinguish cases holding otherwise because they dealt with out-of-state defendants, not only is that distinction unpersuasive, but the Court has identified examples where, as here, the defendant resided in the state in which the action was initiated but lacked contacts in the forum district. Under the prevailing analysis, those courts found venue improper based on the defendant's lack of in-forum contacts. *See Belaustegui v. KC Media LLC*, No. 4:20 CV 531 CDP, 2020 WL 4805075, at *1-2 (E.D. Mo. Aug. 17, 2020) (holding that a defendant limited liability company "with its principal place of business in . . . the Western District of Missouri" lacked sufficient contacts in the Eastern District of Missouri and therefore venue under § 1400(a) was improper); *Limas v. Blatt*, No. 3:10-CV-915-O, 2010 WL 11618886, at *4 (N.D. Tex. Nov. 8, 2010) ("Plaintiff presents no evidence that [defendant who resided in the Western District of Texas] may be found in the Northern District of Texas. Therefore, venue is improper as to [defendant] in this case."); *Blackburn v. Walker Oriental Rug Galleries, Inc.*, 999 F. Supp. 636, 639 (E.D. Pa. 1998) (defendant who resided and did business in the

Western District of Pennsylvania did "not have sufficient contacts with the Eastern District of Pennsylvania" and therefore venue was improper under § 1400(a)).

Forevermore does not allege that 43 North has any specific contacts within the Western District of New York. Although Forevermore argues in its opposition that 43 North engages in online activities that are "designed to reach customers across New York State, including in this district" and that its "online platforms [are] accessible in this district" (Dkt. 18 at 7), district-specific allegations are not contained in the amended complaint. Moreover, merely operating a website is not enough to demonstrate minimum contacts in the jurisdiction. To establish venue here, Forevermore needed to show that 43 North engaged with the Western District of New York through, for example, sales[4] or targeted marketing. *Cf. Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010) ("[B]y offering bags for sale to New York consumers on the Queen Bee website and by selling bags—including at least one counterfeit Chloé bag—to New York consumers, [defendant] has 'purposefully avail[ed] [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" (citation omitted)); *see Coll. Essay Optimizer, LLC v. Edswell, Inc.*, No. 14-CV-8586 LAK, 2015 WL 5729681, at *5 (S.D.N.Y. Sept. 30, 2015) ("The inquiry is not whether

---

4 The one-time online purchase, after commencement of this lawsuit, by Forevermore's president (Dkt. 18-1 at ¶ 7) is, in the Court's view, insufficient. Furthermore, the burden to show proper venue is on Forevermore, and it does not argue in opposition to the venue motion that it had sufficient contacts in this district under § 1400(a)—instead, its arguments with respect to § 1400(a) hinge on its contention that 43 North's status as a New York entity subjects it to personal jurisdiction throughout the state. But as detailed here, the Court rejects this theory as establishing venue under § 1400(a).

defendants have offered services in commerce; indeed, courts in this circuit have declined to exercise jurisdiction over defendants who sold products through their websites. The correct inquiry is whether defendant's services were targeted at New York residents, and whether New York residents used those services." (footnotes omitted)). If in-district contacts were sufficient just because a website could be accessed from the subject district, the rule requiring sufficient contacts would cease to exist. In other words, the requisite minimum contacts could be shown anywhere there was internet access.

For these reasons, the Court concludes that venue for the copyright claims is not proper in this district.

**B. Venue for Non-Copyright Claims**

Venue in the Western District of New York is also improper for Forevermore's non-copyright claims. The general civil venue statute sets three avenues for proper venue:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Atl. Marine Const. Co.*, 571 U.S. at 56.

Forevermore does not contest 43 North's arguments that venue is improper pursuant to § 1391(b)(1) and (b)(3). The Court agrees that (b)(1) does not apply because there are no allegations that 43 North resides in the Western District, and the amended complaint alleges that 43 North is located in White Plains, which is in the Southern District of New York. *See also* 28 U.S.C. § 1391(d) (corporate defendant in multi-district state resides "in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State"). And (b)(3) is not applicable because venue is proper in the Southern District of New York.

But Forevermore contends that venue in this district is proper pursuant to (b)(2) because a "substantial part" of the events giving rise to its claims occurred here, theorizing that 43 North's website can be accessed in this district. (Dkt. 18 at 7). The Court disagrees.

The Second Circuit has "caution[ed] district courts to take seriously the adjective 'substantial'" in assessing venue under § 1391(b)(2). *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005). Indeed, the "substantial part" test presents a higher burden than the "minimum contacts" test for determining personal jurisdiction. *Id.* ("It would be error, for instance, to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries."). In recognition of this directive, courts in this circuit have concluded that alleged infringement of intellectual property on the internet does not satisfy the "substantial part" test. *See Abalu v. Soc'y of Hum. Res. Mgmt.*, No. 24-CV-5917 (LJL), 2025 WL 1019199, at *14 (S.D.N.Y. Apr. 4, 2025) ("The Court also may not infer venue in this District from the fact the alleged misuse of Plaintiff's intellectual property occurred online."); *Detroit Coffee Co., LLC v. Soup for*

*You, LLC*, No. 16-CV-9875 (JPO), 2018 WL 941747, at *4 (S.D.N.Y. Feb. 16, 2018) ("The mere existence of [defendant's] online-ordering platform does not indicate that a 'substantial part' of the infringing events occurred in this district."); *Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 609 (S.D.N.Y. 2016) ("But the fact that an infringing material is accessible via the internet in a jurisdiction is hardly sufficient to conclude that this infringement *occurred* in this district for the purposes of venue.").

Forevermore's reliance on *McGraw-Hill Companies, Inc. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d 252 (S.D.N.Y. 2005) is misplaced. As Forevermore acknowledges, in holding that the injury for a copyright case is determined "in the state where the allegedly infringed intellectual property is held," the district court was addressing whether it had personal jurisdiction over the defendant under New York's long-arm statute. (Dkt. 18 at 7 (quoting *McGraw-Hill Companies, Inc.*, 375 F. Supp. 2d at 256)). That provision permits personal jurisdiction over a non-domiciliary if the defendant "expects or should reasonably expect the [tortious] act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]" C.P.L.R. § 302(a)(3)(ii). The court in *McGraw-Hill Companies* held that it should be reasonably foreseeable that copyright and trademark infringement over the internet would have consequences in the state where the property was held, thereby satisfying the long-arm provision. 375 F. Supp. 2d at 256. That analysis is distinct from the inquiry for venue purposes under 28 U.S.C. § 1391(b)(2).

To satisfy the provisions of § 1391(b)(2) through 43 North's internet activities, Forevermore must plausibly allege "either substantial sales of the infringing product in the district or intentional targeting of the infringing product into the district." *Detroit Coffee*

*Co.*, 2018 WL 941747, at *2; *see also Abalu*, 2025 WL 1019199, at *14 ("[A] Plaintiff must plead facts showing that commercial activity in this District 'actually occurred or was actively sought.'" (citation omitted)). Forevermore has neither alleged nor demonstrated that 43 North engaged in such in-district activity and the Court therefore concludes that venue for the non-copyright claims is also improper in the Western District of New York.[5]

**C. Transfer v. Dismissal**

Rather than dismissing this action, the Court finds pursuant to 28 U.S.C. § 1406(a) that the interests of justice favor transferring this case to the Southern District of New York. The case is still in the early stages of litigation, and the merits of Forevermore's claims have yet to be tested. Furthermore, "[c]opyright infringement claims are subject to a 3-year statute of limitations, which runs from the date of discovery of the infringing activity," *Gunnells v. Teutul*, 469 F. Supp. 3d 100, 104 (S.D.N.Y. 2020), and it is likely that the statute of limitations on Forevermore's copyright claim has expired. The amended complaint does not specifically state when Forevermore discovered the infringing activity but includes "a screenshot from June of 2022" that allegedly shows that 43 North offered digital copies of the copyrighted material for sale on its website. (Dkt. 5 at ¶ 15). Thus, if

---

[5] Although not expressly argued by Forevermore, the location of the physical tapes is also insufficient for venue to be proper in this district under § 1391(b)(2). On similar facts, another court in this district previously concluded that venue was improper on a Lanham Act claim where the infringing products were held in a warehouse within the district. *See Bassili v. Chu*, 242 F. Supp. 2d 223, 231 (W.D.N.Y. 2002) ("In this court's view, the fact that the plaintiffs' products might be found in a warehousing or distribution facility located within the district, and that the dissemination of false information over the Internet may cause a diminution in value of the inventory, is simply too tenuous a connection with the forum to require a California resident to defend a product disparagement action here.").

Forevermore discovered the infringing activity in June 2022, the statute of limitations expired by June 2025. The Court therefore finds that the interests of justice require transfer to the Southern District of New York so that Forevermore may continue pursuing its claims. *See, e.g.*, *Loos v. Mitcheltree*, No. 13-CV-69S, 2013 WL 3759957, at *2 (W.D.N.Y. July 15, 2013) ("Because the statute of limitations has run in the present case, transfer to a proper venue is the appropriate action.").[6]

Finally, because the Court has determined that venue is not proper in this district, it does not reach 43 North's alternative argument that venue should be transferred pursuant to 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses [and] in the interest of justice."

---

[6] In its notice of cross-motion, Forevermore sought "the right to conduct venue discovery prior to any ruling with respect to Defendant's motions to dismiss the action for improper venue . . . or to transfer venue . . ., in the event the Court does not deny said motions outright." (Dkt. 18-5 at 1). Forevermore's papers are silent, though, on what discovery is sought or needed to defend 43 North's venue motion. *See This, LLC v. HolaBelle, Inc.*, No. 3:23-CV-1579 (SVN), 2024 WL 2957037, at *12 (D. Conn. June 12, 2024) (explaining that the Second Circuit "has not addressed whether limited discovery is available for venue discovery," but analogizing it to jurisdictional discovery, noting that it could be allowed where a plaintiff has made a "sufficient start toward" establishing venue, or identified a genuine issue of disputed fact relevant to venue). Because Forevermore has failed to articulate any basis for venue discovery, its request is denied.

## CONCLUSION

For the foregoing reasons, 43 North's motion to dismiss or transfer because of improper venue is granted in part and denied in part; 43 North's motion to dismiss for failure to state a claim is denied as moot; Forevermore's cross-motion to conduct venue discovery is denied; and Forevermore's cross-motion to file a second-amended complaint is denied as moot. The Clerk of Court is directed to transfer this case to the Southern District of New York.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: July 28, 2026
Rochester, New York